In the Matter of Dennis Charles
WILLIAMS, Debtor.

ABD FEDERAL CREDIT UNION,
Plaintiff,

v.

Dennis Charles WILLIAMS, Defendant.

Bankruptcy No. 79–04104–P.
Adversary Proceeding No. 80–0271.

United States Bankruptcy Court,
E. D. Michigan, S. D.

Oct. 21, 1980.

Nora Lee Wright, Detroit, Mich., for defendant.

Kenneth C. Butler, II, East Detroit, Mich., for plaintiff.

John C. Dougherty, Standing Chapter 13 Trustee, Detroit, Mich.

OPINION

DAVID H. PATTON, Bankruptcy Judge.

This matter is before the Court upon motion of the debtor, Dennis Charles Wil-

liams, requesting that ABD Federal Credit Union be ordered to return to him a 1977 Dodge van. The underlying facts are not disputed.

Williams purchased the vehicle in May of 1978, obtaining part of the purchase price from ABD in the form of a loan. ABD was granted a security interest securing the repayment of this loan. Williams subsequently became delinquent in his payments and on November 21, 1979 the vehicle was repossessed by ABD.

On December 6, 1979 Williams filed a petition under Chapter 13 of the Bankruptcy Code, 11 U.S.C. Sec. 1301 et seq., and obtained an order restraining ABD from selling the vehicle. Since that time efforts by the attorneys for Williams and ABD to negotiate an acceptable settlement have been unsuccessful, and Williams now requests that the vehicle be ordered returned to him.

It is not disputed that ABD lawfully gained possession of Williams' vehicle by exercising its right to repossession following Williams' default in payment.[1] The issue is whether it should be returned and if so, what conditions should be imposed on Williams as a result of such turnover.

Under pre–Code law, determination of whether property in which a debtor asserted rights but which was held by another entity was subject to the jurisdiction and control of a court acting under the bankruptcy statutes was analyzed in terms of whether the party in possession asserted an adverse claim to the property which was "substantial" or merely "colorable." *Harrison v. Chamberlain*, 271 U.S. 191, 46 S.Ct. 467, 70 L.Ed. 897 (1926); *Warder v. Brady*, 115 F.2d 89 (4th Cir. 1940); *In the Matter of Greater Pythian Temple Association of New York*, 19 F.Supp. 762 (S.D.N.Y.1937). See also 6 *Collier on Bankruptcy*, 14th ed., para. 3.05.

■ The need for this sort of analysis is eliminated by the broadening of jurisdiction afforded bankruptcy courts under the Bankruptcy Reform Act of 1978.[2] Under the jurisdictional provisions of this legislation this court has jurisdiction to hear and determine whether the vehicle is property which should be turned over to Williams,[3] and jurisdiction to enforce such a turnover if it is found to be warranted.[4]

■ Section 543 of the Code deals with property of a debtor held by a custodian. A custodian is defined, inter alia, to mean a ". . . trustee, receiver, or agent under applicable law, or under a contract, that is appointed or authorized to take charge of property of the debtor for the purpose of enforcing a lien against such property." 11 U.S.C. Sec. 101(10)(C).

A secured creditor such as ABD, holding property repossessed from a debtor by virtue of its exercise of self–help enforcement of a security interest, is under this definition a custodian. 11 U.S.C. Sec. 101(10)(C).[5] 2 *Collier on Bankruptcy*, 15th ed., para. 101.10.[6] Section 543 therefore is applicable to ABD. 11 U.S.C. Sec. 103(a).

Section 543 provides:

---

1. Self-help repossession is permitted under the Uniform Commercial Code as adopted in Michigan. The statute provides that "a secured party has on default the right to take possession of the collateral. In taking possession a secured party may proceed without judicial process . . ." M.S.A. Sec. 19.9503; M.C.L. Sec. 440.-9503.

2. See *In the Matter of Troy Industrial Catering Service, Inc.*, 1 C.B.C. 323 (Bkrtcy.E.D.Mich. 1980); *In the Matter of Aurora Cord & Cable Company, Inc.*, 2 B.R. 342, 1 C.B.C. 486 (Bkrtcy.N.D.Ill.1980).

3. 28 U.S.C. Sec. 1471(b), (c).

4. 28 U.S.C. Sec. 1471(e); 28 U.S.C. Sec. 1481.

5. Section 101(37) and the accompanying legislative history make it clear that a Uniform Commercial Code security interest is a lien–a "lien created by an agreement." 11 U.S.C. Sec. 101(37). See also 11 U.S.C. Sec. 101(28) which defines lien.

6. In part, the cited paragraph states: "Note that a collecting agent under a security agreement may be considered an 'agent . . . under a contract, that is appointed or authorized to take charge of property of the debtor for the purpose of enforcing a lien against such property' . . ."

"(a) A custodian with knowledge of the commencement of a case under this title concerning the debtor may not make any disbursement from, or take any action in the administration of, property of the debtor, proceeds of such property, or property of the estate, in the possession, custody, or control of such custodian, except such action as is necessary to preserve such property.

(b) A custodian shall—

(1) deliver to the trustee any property of the debtor transferred to such custodian, or proceeds of such property, that is in such custodian's possession, custody, or control on the date that such custodian acquires knowledge of the commencement of the case; and

(2) file an accounting of any property of the debtor, or proceeds of such property, that at any time, came into the possession, custody, or control of such custodian.

(c) The court, after notice and a hearing, shall—

(1) protect all entities to which a custodian has become obligated with respect to such property;

(2) provide for the payment of reasonable compensation for services rendered and costs and expenses incurred by such custodian; and

(3) surcharge such custodian, other than an assignee for the benefit of the debtor's creditors that was appointed or took possession more than 120 days before the date of the filing of the petition, for any improper or excessive disbursement, other than a disbursement that has been made in accordance with applicable law or approved, after notice and a hearing, by a court of competent jurisdiction before the commencement of the case under this title.

(d) The bankruptcy court may, after notice and a hearing, excuse compliance with subsection (a), (b), or (c) of this section, if the interests of creditors, and, if the debtor is not insolvent, of equity security holders, would be better served by permitting a custodian to continue in possession, custody, or control of such property."

■ It is not disputed that the vehicle was Williams' property prior to its repossession. The repossession effected a transfer of all but certain rights in the property from Williams to ABD.[7] These rights are "property of a debtor transferred to a custodian" and still in its "possession, custody, or control," and therefore must be returned to Williams unless this Court excuses ABD from complying with Section 543. 11 U.S.C. Sec. 101(40); 11 U.S.C. Sec. 543(b)(1); 11 U.S.C. Sec. 543(d).

Permitting ABD to retain custody of the vehicle in this case is neither necessary nor desirable. As will be discussed, infra, any use or disposition Williams makes of the vehicle is subject to this court's control. Allowing ABD to retain possession would create an anomalous situation in which ABD would have possession of the vehicle but not be able to sell or otherwise dispose of it as such disposition would constitute a

---

**7.** ABD argues that this court cannot order the return of the vehicle because title has passed from Williams to it. In support of this contention it introduced a certificate of title issued in its name following the repossession. While the issuance of a certificate of title in the name of a repossessing secured creditor is permitted under Michigan Motor Vehicle Code, M.S.A. Sec. 9.1936(1); M.C.L. Sec. 257.236a, the payment of certain taxes and transfer fees is not required until the ultimate disposition of the vehicle. As such it seems that the issuance of the title certificate relied on by ABD is more a matter of administrative convenience, "merely a step in the collection process," *In the Matter of Troy Industrial Catering, supra,* than a dispositive passage of title.

In any event this court is not limited to consideration of whether title may or may not have passed in its determination of the scope and applicability of the Bankruptcy Code. The Uniform Commercial Code rejects reliance on title concerns as a basis for determination of rights in situations governed by its provisions. U.C.C. Sec. 9–202. This approach has not gone unnoticed by the courts in application of the bankruptcy statutes, *In re Yale Express,* 370 F.2d 433 (2d Cir. 1966); 384 F.2d 990 (2d Cir. 1967), and appears to have been followed by the drafters of the new Title 11 and its accompanying provisions.

further enforcement of its security interest in contravention of the automatic stay provisions of Section 362. 11 U.S.C. Sec. 362(a). It is also foreseeable that Williams will be unable to propose or complete a Chapter 13 plan if deprived of the use of the vehicle.[8] The economic utility of such a course is not evident to the court. The self–help provisions of the law are designed to allow the secured creditor to enforce his lien without judicial action. The intervention of this Court between the parties terminates this possibility.[9] The Code is intended to make Chapter 13 adjustment a more accessible and desirable alternative to liquidation under Chapter 7 than it was under previous law.[10] In these circumstances ABD's interests as a creditor are not sufficient to justify its continued possession of the vehicle during the interim between filing and confirmation, conversion or dismissal and it should therefore be turned over to Williams. 11 U.S.C. Sec. 543(a)(1), (c).

The return of the vehicle under Section 543 will make it part of the estate created by Section 541. 11 U.S.C. Sec. 541(a)(3). Williams clearly contemplates that if the vehicle is returned to him he will immediately begin using it. While the Code specifies that property of the estate of a Chapter 13 debtor is to remain in his possession except as provided in a confirmed plan [11] its use is subject to the conditions imposed on use of property by Section 363. 11 U.S.C. Sec. 1303; 11 U.S.C. Sec. 363(b), (d); 5 *Collier on Bankruptcy*, 15th ed., para. 1303.-01(2)(A). This court is also charged with providing for the payment of "reasonable compensation for ... costs and expenses incurred" by ABD in its role as custodian. 11 U.S.C. Sec. 543(c)(2).

Under Section 363 an entity having an interest in property which a Chapter 13 debtor proposes using can request that the bankruptcy court provide adequate protection of such interest. 11 U.S.C. Sec. 363(c). Even though the operation of Section 543 divests ABD of its possessory interest in the vehicle it still remains a secured creditor and is therefore entitled to adequate protection under Section 363. The record indicates that the value of the vehicle is far less than the full amount of ABD's claim.[12] Since in this situation the amount of the secured claim is limited to the value of the collateral in which ABD has an interest, i. e. the value of the vehicle, the interest which must be protected is confined to that amount.[13]

Under Section 361 adequate protection may be provided in a variety of ways. Williams' use of the vehicle pursuant to Section 363(b) will presumably cause the value of the vehicle to decline. This Court, if it permits Williams to use the vehicle, must therefore grant relief which will protect ABD from this depreciation and result in its realization of the "indubitable equivalent" of the amount of its allowed secured claim. 11 U.S.C. Sec. 361; *In re Murel Holding Co.,* 75 F.2d 941 (2d Cir. 1935). This relief can take the form of periodic cash payments or may take such other forms as the court determines provided they meet this requirement. 11 U.S.C. Sec. 361; 11 U.S.C. Sec. 105.

At the time of the filing of the motion presently before the court Williams filed a plan under which he proposes making semi–monthly $55.00 payments to the trustee to be applied to ABD's claim. The value of

---

8. Williams argues that the vehicle is essential to his ability to get to and from work.

9. At a minimum, application to this court would be required to lift the stay to permit disposition of the property by ABD. 11 U.S.C. § 362(d), (e), (f).

10. See the discussion contained in 5 *Collier on Bankruptcy*, 15th ed., para. 1300.01 et. seq., 1300.02.

11. 11 U.S.C. Sec. 1306(b).

12. The vehicle is valued by the debtor at $3,550.00. The scheduled debt is $4,800.00.

13. ABD's remaining interest in the property is as security for its loan claim against Williams. This secured claim is limited under Section 506 to the value of the vehicle. 11 U.S.C. Sec. 506(a).

the vehicle is $3,550.00.[14] The proposed payments will therefore compensate ABD for a decline in this value of approximately three per cent (3%) each month. In these circumstances this will afford ABD adequate relief from any decline in the value of its interest in the vehicle caused by Williams' use in the period between its return to him and the confirmation of a plan or the conversion or dismissal of this case. The remaining interest ABD has can be protected by the continuation in force of the terms and conditions of the security agreement between Williams and ABD. 11 U.S.C. Sec. 361(2).

To the extent that ABD has expenses attributable to its role as a custodian it may file a request under Section 503.

In conclusion it is the holding of this Court that Williams' motion for return of the vehicle held by ABD is granted subject to the following conditions:

1) Williams will pay $55.00 semi-monthly to the trustee.

2) The security agreement will remain in force.

An order may be entered to this effect.

---

**14.** This represents a preliminary valuation reached in reliance on the as yet undisputed value attributed to the vehicle by Williams in his schedules and proposed plan. It is adopted to allow a determination of the adequacy of payments under Sections 363 and 361 of the Code. The legislative history to Section 506 clearly contemplates such a preliminary determination of value. It should also be noted that the history states that such an early determination will not be binding at later stages of the proceeding. Senate Report No. 95–989, 95th Cong., 2d Sess. (1978), 66 U.S. Code Cong. & Admin. News 1978, p. 5787.